UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.                                                                              Case No. 8:06-CR-448-T-27MSS

BETTY CHANDLER TRENT

_____/

ORDER

**BEFORE THE COURT** is Defendant's Renewed Motion for Judgment of Acquittal, or, in the Alternative, For New Trial (Dkt. 120). Pursuant to this Court's Order of August 28, 2007 (Dkt. 124), the Government filed its supplemental response (Dkt. 131). Upon consideration, Defendant's Renewed Motion for Judgment of Acquittal, or, in the Alternative, For New Trial (Dkt. 120) is DENIED in part and GRANTED in part.

Defendant was charged in a seven count Superseding Indictment with conspiracy to defraud the United States, wire fraud, theft of federal funds, false claims, embezzlement of public money, falsification of records and false statements (Dkt. 48). After a jury trial, Defendant was convicted on all counts (Dkt. 116). For the reasons set forth in this Court's Order of August 28, 2007 (Dkt. 124), Defendant's motion for judgment of acquittal as to Counts One, Three, Six and Seven was DENIED. This Order addresses Defendant's arguments as to Counts Two, Four, Five and Seven,[1] as well as Defendant's Motion for New Trial based on Defendant's argument that it was error to

---

[1] Although this Court denied Defendant's motion as to Count Seven in the earlier order, (Dkt. 124), in an abundance of caution, because of a typographical error at page 3 of that order, Count Seven is addressed herein.

1

allow the jury to review the transcript of the audio recording from the Cracker Barrel restaurant during its deliberations.

### *Rule 29(c) Motion for Judgment of Acquittal*

In considering Defendant's challenge to the sufficiency of the evidence, the evidence is examined in the light most favorable to the government to determine whether a reasonable juror could find the defendant guilty beyond a reasonable doubt. *United States v. Molina*, 443 F.3d 824, 828 (11th Cir. 2006); *United States v. Thomas*, 8 F.3d 1552, 1556 (11th Cir. 1993); *United States v. Martinez*, 763 F.2d 1297, 1302 (11th Cir. 1985). All reasonable inferences tending to support the government's case are drawn in favor of the jury's verdict. *United States v. Barfield,* 999 F.2d 1520, 1522 (11th Cir. 1993), *cert. denied,* 522 U.S. 875 (1997). All credibility choices must be made in favor of the verdict. *United States v. Miles*, 290 F.3d 1341, 1355 (11th Cir. 2002). The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt. *United States v. Ward*, 197 F.3d 1076 (11th Cir. 1999).

In support of her motion for new trial, Defendant argues that it was error to permit the jury to review transcripts of a conversation which occurred at a Cracker Barrel restaurant in which Defendant was a participant. A consensual recording of that conversation was made by Devon Moore, who was cooperating with the Government at the time.

To the extent Defendant renews her arguments made in her pre-trial motion in limine seeking to exclude the audio recordings, those arguments are rejected for the same reasons announced by the Court when it denied that motion. The statements were clearly not hearsay, as Defendant contends. Defendant's own statements are not hearsay. Rule 801(d)(2)(A). The statements attributed to Joe

Ann Bennett were statements of a co-conspirator, admissible under Rule 801(d)(2)(E). The statements of Devon Moore were not offered for the truth of the matters asserted and were not therefore hearsay. Moore testified and was subject to extensive cross-examination by Defendant. Moreover, at the time of the recording, the conspiracy between Defendant and Bennett was ongoing. *See United States v. Casamayor*, 837 F.2d 1509 (11th Cir. 1988).

In support of her motion in limine, Defendant did not contend that the audio recordings were so inaudible that they were inadmissible. Nor did she argue that the Government transcripts were inaccurate. She essentially argued that the audio recordings were inaudible in part, and that the jury could not use the transcripts to assist themselves in following the recorded conversation. Defendant did not proffer her own version of the transcript. During trial, Special Agent Cheney testified to the preparation of the transcript. In short, the transcripts were properly authenticated. In this circumstance, Defendant was not "without recourse." She could have, but did not, prepare and submit her own version. *United States v. Wilson,* 578 F.2d 67, 69-70 (5th Cir. 1978). Consistent with the Eleventh Circuit's cautionary instruction on the use of transcripts, the jury was instructed that the transcript was to be considered by them only as an aid to assist them in following the audio recording and that they must rely primarily on the audio recording. The transcripts were properly considered by the jury as an aid. *See United States v. Cruz,* 765 F.2d 1020, 1023 (11th Cir. 1985); *United States v. Onori*, 535 F.2d 938, 947-49 (5th Cir. 1976).

The jury had access to both the audio recording and the transcript during its deliberations. Since the transcripts were properly authenticated and appropriately used by the jury as an aid when they listened to the audio recording during trial, and the jury was properly cautioned as to its use of the transcripts as an aid, it was not error for the jury to review the transcript during its deliberations.

3

*United States v. Costa*, 691 F.2d 1358, 1362-63 (11th Cir. 1982); *United States v. Brown*, 872 F.2d 385, 392 (11th Cir. 1989).

**Count Two:** As to Count Two, Defendant contends that the May 6, 2003 wire transfer of HUD funds to the BHA was not "closely related to the scheme to bring the conduct within the ambit of the wire fraud statute," citing *United States v. Coyle*, 63 F.3d 1239, 1244 (3rd Cir. 1995). Defendant's contention has merit. Defendant's motion for judgment of acquittal as to Count Two, wire fraud, is therefore GRANTED.

Count Two alleges only one wire transfer, a May 6, 2003 wire from HUD to the BHA. That wire transfer was made one day after Devon Moore's last check was issued pursuant to Defendant's scheme to defraud. The wire transfer was not, therefore, the result of the scheme or incident to the scheme and was not closely related to the scheme. It just happened to have been made close in time to the last fraudulent act of the scheme. "The federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law." *Schmuck v. United States*, 489 U.S. 705, 710 (1989) (citing *Kann v. United States*, 323 U.S. 88, 95 (1944)).[2] Here, Defendant's scheme did not contemplate the use of interstate wire. Nor was the May 6, 2003 wire "a part of the *execution* of the fraud." Defendant and Ms. Bennett simply embezzled funds which happened to have been wired into the BHA operating account by HUD. The use of the interstate wires was not part of that scheme to embezzle. It is not enough, therefore, that Defendant and Bennett stole money from the BHA account which happened to have been wired by HUD.

---

[2] Defendant's wire fraud conviction is subject to the same analysis as a mail fraud conviction. *United States v. Ross*, 131 F.3d 970, 985 (11th Cir. 1997).

The evidence established that HUD regularly transmitted funds to the BHA on a monthly basis and that the May 6, 2003 wire transfer was one of those regular monthly transmissions. Those transmissions were in the same amount every month. The funds allocated to the BHA by HUD were calculated based on HUD's formula and not on anything submitted by the BHA. Defendant's fraudulent activities had no effect on the amount transferred by HUD or whether the funds were even transferred. The fraud did not result in the wire transfer or cause it to be made. Defendant and Ms. Bennett simply took advantage of the availability of the HUD funds and embezzled them. The wire transfers would have occurred regardless of the existence of the scheme. The use of interstate wire on May 6, 2003 was not therefore a part of the execution of the fraud alleged in Count Two. The May 6, 2003 wire transfer cannot be said, therefore, to have been made "for the purpose of executing the wire fraud scheme" alleged in Count Two.

Moreover, the scheme had essentially reached fruition before the May 6, 2003 wire. In this instance, that particular wire did not even provide funds which were embezzled by Defendant pursuant the scheme. The embezzlement scheme perpetrated by Defendant was complete when the May 6, 2003 wire occurred. That wire could not therefore have furthered the scheme, since the last embezzlement had occurred and Defendant was not relying on those wired proceeds to succeed in her scheme.

To prove wire fraud, the Government must have proven Defendant's intentional participation in a scheme to defraud and the use of the interstate wires in furtherance of the scheme. *United States v. Robertson,* 493 F.3d 1322, 1331 (11th Cir. 2007). Although the wire transmission need not be essential to the success of the scheme to defraud, it must be shown to have been "for the purpose of executing" the scheme. *United States v. Evans,* 473 F.3d 1115, 1118 (11th Cir. 2006) (citing *Pereira*

5

v. *United States*, 347 U.S. 1, 8 (1954)). An interstate wire transmission is "for the purpose of executing" the scheme to defraud if it is "incident to an essential part of the scheme" or "a step in the plot." *United States v. Hasson*, 333 F.3d 1264, 1273 (11th Cir. 2003) (citing *Schmuck v. United States,* 489 U.S. at 710-11).

Simply put, not only did the success of the wire fraud scheme charged in Count Two not depend on the May 6, 2003 wire, the evidence, even in the light most favorable to the Government, did not prove beyond a reasonable doubt that the May 6, 2003 was "incident to an essential part of the scheme" or "a step in the plot." Simply because it was made the day after Devon Moore's last check was issued pursuant to the scheme does not, as the Government argues, render it "closely related" to the scheme so as to satisfy § 1343's jurisdictional basis.

With respect to the timing of the transfer and the issuance of Moore's last check, the use of interstate wire can follow the achievement of the object of a fraud, since it may be essential, for example, to avoid detection or to lull the victim into complacency. *See United States v. Mills*, 138 F.3d 928, 941 (11th Cir. 1998), *cert. denied,* 525 U.S. 1003 (1998). However, where, as here, a wire transfer is made after a scheme has reached fruition, it cannot have been "for the purpose of executing" the scheme within the meaning of 18 U.S.C. § 1343. *See United States v. Evans,* 473 F.3d at 1118, *cert. denied,* ___ U.S. ___ (October 1, 2007). The fruition of a scheme has been defined as the "point beyond which mail and wire transmissions cannot be in furtherance of the scheme." *Id.* at 1119. The scheme was not shown to have continued beyond Devon Moore's last check. Further, the Indictment did not allege that the charged scheme involved any "lulling" nor did the Government introduce any "lulling" evidence.

Where a wire or mail fraud scheme is shown to have reached fruition prior to the

transmission or mailing, a conviction cannot stand. *United States v. Adkinson*, 158 F.3d 1147, 1163 (11th Cir. 1998) (citing *United States v. Smith*, 934 F.2d 270, 272 (11th Cir. 1991))(mailing does not further scheme if defendant has taken possession of the object of the fraud and the fraud is then at an end); *United States v. Evans*, 473 F. 3d at 1119. The jury's determination that Defendant caused the May 6, 2003 wire transfer to be made "for the purpose of executing" her scheme is inconsistent with applicable law and is not supported by sufficient evidence. Defendant's motion as to Count Two is GRANTED.[3]

**Count Four:** As to Count Four, Defendant contends that a false claim submitted to the BHA does not constitute a false claim against HUD and accordingly, the false claim cannot constitute a violation of § 287. Defendant's contention is without merit. The presentation of a false claim to a state agency acting as an intermediary constitutes a violation of § 287 so long as the origin of the funds used to make payment is the federal government. *See United States v. Montoya*, 716 F.2d 1340 (10th Cir. 1983); *United States v. Littlefield*, 840 F.2d 143, 151 (1st Cir. 1988); *United States v. Bolden*, 325 F.3d 471, 494 n.28 (4th Cir. 2003). By analogy, in a § 1001 prosecution, use of federal funds by a state agency was found to be sufficient to support a conviction of making a false statement. *United States v. Suggs,* 755 F.2d 1538, 1542 (11th Cir. 1985). The federal origin of the BHA's funds was essentially undisputed during trial. The BHA depends on HUD for its funding.

---

[3] In the mail fraud context, applicable by analogy, one "causes" the use of the mail where she "does an act with knowledge that the use of the mails *will follow* in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended . . . ."(*emphasis added*) *United States v. Maze*, 414 U.S. 395, 399 (1974) (quoting *Pereira v. United States*, 347 U.S. at 8-9). Here, while Defendant, as Executive Director of the BHA, knew or reasonably could have foreseen that the sole source of the embezzled funds were wired from HUD, this Court concludes that the May 6, 2003 wire did not "follow any act of Defendant in perpetrating the fraudulent scheme. Simply put, the May 6, 2003 would have been made regardless of the prior embezzlements and was not therefore made "for the purpose of executing" that scheme.

There was therefore substantial and significant federal involvement in the funding of the BHA. Defendant's motion as to Count Four is DENIED.

**Count Five:** As to Count Five, Defendant contends that she could not have violated § 641 because the HUD funds received by the BHA were the subject of an outright grant and therefore the funds lost their federal identity and could not have been property of the United States. Indeed, an essential element of a § 641 violation is that the government suffer some actual property loss. *United States v. Evans*, 572 F.2d 455, 471 (5th Cir. 1978). The jury was instructed accordingly. (Dkt. 115, p. 25). Whether the specific funds that were embezzled were possessed of sufficient indicia of federal ownership to satisfy that element of the offense is a jury question. *United States v. Evans*, 572 F.2d at 471.

In *Evans*, the Court recognized that with respect to tangible property claimed to be property of the United States, those cases finding sufficient federal interest in tangible property "generally involved instances in which the government had either title to, possession of, or control over the tangible object involved." *Id.* at 471. With respect to intangible property, such as funds, the key factor in determining the sufficiency of the federal interest "is the supervision and control contemplated and manifested on the part of the government." *Id.* at 472. In this Circuit, the "supervision and control" test is applied in cases involving § 641 violations for misappropriation of funds from an intermediary which has received government monies for further disbursement to eligible recipients. *United States v. McRee*, 7 F.3d 976, 980 (11th Cir. 1993) (citing *United States v. Hope*, 901 F.2d 1013, 1019-20 (11th Cir. 1990)).

The Government has not addressed whether sufficient evidence was presented to satisfy the "supervision and control" test. Rather, the Government relies on *United States v. Hope* for the

general proposition that HUD funds remain property of the United States. (Dkt. 131, p. 16). The Government's argument overlooks the intricate federal control over the HUD funds found to have been established by the evidence in *Hope*. That control satisfied this Circuit's "supervision and control" test.

Here, the Government presented sufficient evidence of governmental control and supervision over the funds transmitted by HUD to the BHA from which a reasonable jury could find that the embezzled funds were the property of the United States. John Niesz, the Director of Public Housing for HUD, supervises a staff of individuals who "basically monitor and oversee the individual housing authorities," among which is the BHA. Niesz testified that although HUD is not directly involved in the day to day operation of the BHA, the BHA's Board of Commissioners is charged with operating the BHA in accordance with the federal regulations. The BHA is required to submit an annual plan indicating how the federal funds were spent. HUD conducts an annual review of that plan for any appearance of impropriety or non-compliance with the regulations. Neisz testified that housing agents have to have a financial audit conducted by an independent public accountant. Those documents are provided to HUD and his staff reviews them for any appearance of impropriety or noncompliance with the regulations. HUD may request an explanation for any questionable expenditures and there are consequences if HUD discovers irregularities or wrongdoing.

In 2002 Niesz' office conducted an on site assessment of the BHA's compliance with the Housing Act of 1937 and various HUD requirements. As a result of that assessment, the BHA was required to address and correct the non-compliance. Niesz described a series of letters back and forth between HUD and the BHA confirming that corrective measures had been implemented by the BHA. Finally, while Niesz confirmed that once the HUD funds were transferred to the BHA, the

BHA had the responsibility of determining how to spend its funding, "as long as" the things the housing authority spent the money on "were legitimate work items."

This evidence, paraphrased because a certified transcript of Niesz' testimony is not yet available, was sufficient to demonstrate that HUD did exercise supervision and control over how the BHA spent its federal funding and a reasonable jury could therefore find that the funds embezzled by Defendant were the property of the United States, notwithstanding the HUD funds were deposited into the BHA's general operating account and were commingled with funds generated by the operation of the BHA, such as rent and security deposits.

Defendant's argument that outright grants of federal funds cause the funds to lose their federal identity finds support in the case law. For example, where federal funds are intended as an outright grant and are not subject to federal control, those funds lose their federal identity. *See United States v. Evans*, 572 F.2d at 474 ("Here most of the funds were initially federal monies and it is statutorily contemplated that the ultimate repayment will be to the federal government. Here the monies have a federal origin and a federal end, and during their outstanding circulation they are subject to extensive federal controls. This is not the situation in which the federal monies are intended as an outright grant.")

Moreover, federal funds intended as an outright grant which are commingled no longer constitute property of the United States for purposes of § 641. *United States v. Evans*, 572 F.2d at 471 (We may accept the argument that when an outright grant is paid over to the end recipient, utilized, commingled or otherwise loses its identity, the money in the grant ceases to be federal.) In other words, once the funds are received and utilized or commingled, the funds lose their federal identity. *Id.* The Court in *Hope* recognized that "one bright line." 901 F.2d at 1019 ("[W]hen an

outright grant is paid over to the end recipient, utilized, commingled or otherwise loses its identity, the money in the grant ceases to be federal.")

To prove the essential element of a property interest of the United States, the evidence must have established the Government's exercise of supervision and control over the BHA funds maintained in its general operating account. In this regard, the Government's evidence was sufficient to meet this test, although it is a close issue. Defendant's motion for judgment of acquittal as to Count Five must be DENIED.

**Count Seven:** With respect to Defendant's substantive argument in support of her motion for judgment of acquittal as to Count Seven, this Court's review of the evidence and applicable law convinces the Court that Defendant's § 1001 conviction for making false statements to the F.B.I. during her interview is supported by sufficient evidence. A reasonable jury could conclude that Defendant's false denials were material in that they were capable of influencing the investigation. To satisfy the materiality element of a § 1001 prosecution, it is enough if the statements had a "natural tendency to influence, or be capable of affecting or influencing, a governmental function." *United States v. Diaz,* 690 F.2d 1352, 1357 (11th Cir. 1982). The Government does not have to show actual reliance on the false statements and a statement can be material even if it is ignored. *Id.* at 1357-58.

Here, Defendant's false denials were capable of influencing the investigation, even if the statements merely hindered or delayed the investigation for a short time to enable the agents to compare Defendant's false denials with the other evidence they had secured in the case. Notwithstanding that the agents had already interviewed Ms. Bennett and had surveilled the Cracker Barrel meeting and recorded the conversation, the jury could reasonably find that Defendant's false

denials were made with the hope of influencing the investigation by diverting the agents away from her as a knowing participant in concealment attempt. That they did not influence the investigation is irrelevant under the principles discussed above. Defendant's arguments are not persuasive. Accordingly, it is

### ORDERED AND ADJUDGED:

Consistent with this Court's earlier Order (Dkt. 124), Defendant's Renewed Motion for Judgment of Acquittal, or, in the Alternative, For New Trial (Dkt. 120) is DENIED as to Counts One, Three, Six and Seven. The motion is likewise DENIED as to Counts Four and Five. The motion is GRANTED as to Count Two. Defendant's Motion for New Trial is DENIED.

**DONE AND ORDERED** in chambers this 4th day of October, 2007.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record
U.S. Probation